IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CASSANDRA SCIPIO, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | NO.   12-4562 |
| CAROLYN W. COLVIN, : | |
| COMMISSIONER OF SOCIAL SECURITY, : | |
| : | |
| Defendant. : | |

MEMORANDUM

BUCKWALTER, S.J.                                                                                                   July 23, 2014

Currently pending before the Court are Plaintiff John Johnson's Objections to the Report and Recommendation of United States Magistrate Judge Henry S. Perkin. For the following reasons, the Objections are overruled.

I.       PROCEDURAL HISTORY

On April 1, 2008, Plaintiff Cassandra Scipio protectively filed applications for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. § 401, et seq., and for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381, et seq. (R. 100–04.)[1] Her claim alleged disability, since January 8, 2008, due to "[s]troke, difficult walking, talking/speech, walking with cane." (R. 121.) The state agency denied Plaintiff's applications on July 29, 2008. (Id. at 60–69.) Plaintiff timely requested a hearing before an administrative law judge ("ALJ"). (Id. at 73–77.) Following the hearing—at which only Plaintiff testified—ALJ Stephen Bosch issued a decision, dated February 4, 2009, deeming Plaintiff "not disabled." (Id. at 12–19, 31–56.) On June 10, 2009, the Appeals Council denied Plaintiff's request

---

[1] For ease of discussion, citations to the administrative record will be referenced as "R. [page number]."

for review, (id. at 1–4), making the ALJ's ruling the final decision of the agency. See 20 C.F.R. § 404.972; 20 C.F.R. § 416.1572.

Plaintiff initiated litigation in federal court and, on June 7, 2010, the Honorable Lowell A. Reed remanded the case for further administrative proceedings. Scipio v. Astrue, No. Civ.A.09-3071, 2010 WL 2349044 (E.D. Pa. June 7, 2010). In doing so, Judge Reed determined that the ALJ failed to fully discuss all of the relevant evidence regarding Plaintiff's mental impairment and, therefore, did not support his finding of non-severity with substantial evidence. Id. at *1–2. The Appeals Council thereafter returned the case to the ALJ for further proceedings consistent with the District Court's Order. (R. 337–39.)

ALJ Bosch held a second hearing on March 3, 2011. (Id. at 344–63.) By way of a second decision issued on March 24, 2011, the ALJ again denied Plaintiff's request for SSI and DIB. (Id. at 310–18.) The Appeals Council subsequently denied Plaintiff's exceptions. (Id. at 300–02, 403–05.) For purposes of the DIB application, Plaintiff's date last insured was June 30, 2013. (Id. at 442.)

Plaintiff commenced the current litigation in this Court on August 10, 2012. Her Request for Review set forth three alleged errors as follows: (1) whether the ALJ applied proper legal standards in evaluating Plaintiff's credibility; (2) whether the ALJ failed to consider Plaintiff's work record in assessing credibility; and (3) whether the ALJ's finding at the severity step is supported by substantial evidence. On March 31, 2014, United States Magistrate Judge Henry S. Perkin issued a Report and Recommendation ("R&R") recommending that Plaintiff's Request for Review be denied and that judgment be entered in favor of Defendant.

Plaintiff filed Objections to the R&R on April 8, 2014, asserting that: (1) the Magistrate Judge erred in finding both that the ALJ carefully considered all of the evidence and that the ALJ reasonably concluded that Plaintiff does not have a severe mental impairment; (2) the Magistrate Judge improperly found that the ALJ did not need to consider GAF scores of record; and (3) the

Magistrate Judge improperly found that the ALJ did not err in failing to consider Plaintiff's good work record in assessing credibility. Defendant submitted a Response to the Objections on April 24, 2014 and Plaintiff filed a Reply Brief on April 25, 2014, making this matter ripe for judicial review.

## II.   STANDARD OF REVIEW [2]

### A.   Standard for Judicial Review of an ALJ's Decision

It is well-established that judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564–65 (1988)). When making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In other words, even if the reviewing court, acting de novo, would have decided the case differently, the Commissioner's decision must be affirmed when supported by substantial evidence. Id. at 1190–91; see also Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "'limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact'") (quoting Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).

### B.   Standard of Review of Objections to a Report and Recommendation

Where a party makes a timely and specific objection to a portion of a report and

---

[2] The five-step sequential analysis for assessing a disability claim was adequately summarized by the Magistrate Judge. In lieu of repeating that discussion, the Court incorporates by reference that portion of the R&R into this Memorandum.

recommendation by a United States Magistrate Judge, the district court is obliged to engage in de novo review of only those issues raised on objection. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In so doing, a court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1). The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. See United States v. Raddatz, 447 U.S. 667, 676 (1980).

### III. DISCUSSION

#### A. Whether the Magistrate Judge Erred in Finding that the ALJ Properly Concluded that Plaintiff Does Not Have a Severe Mental Impairment

Plaintiff's first objection involves the ALJ's finding at Step Two of the Sequential Evaluation Process. Step Two places a burden on the claimant to show that her impairment is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is "severe" when it is "of a magnitude sufficient to limit significantly the individual's 'physical or mental ability to do basic work activities.'" Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982) (quotations omitted). Conversely, a non-severe impairment does not significantly limit or has only a minimal effect on a claimant's physical or mental ability to do basic work activities.[3] 20 C.F.R. §§ 404.1521(a), 416.921(a); see also Bowen v. Yuckert, 482 U.S. 137, 154 n.12 (1987).

The Social Security regulations set forth a special two-step procedure for assessing the severity of a plaintiff's mental impairments. 20 C.F.R. §§ 404.1520a and 416.920a. First, the ALJ

---

[3] These basic work activities include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b), 416.921(b).

must evaluate the symptoms, signs, and laboratory findings in the record to determine whether the plaintiff has medically determinable mental impairments. Id. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, the ALJ must rate the degree of the plaintiff's functional limitations resulting from the mental impairments in the following areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Id. §§ 404.1520a(b)(2) & (c), 416.920a(b)(2) & (c). If the ALJ rates the plaintiff's limitations in the first three functional areas as "none" or "mild," and "none" in the fourth area, the ALJ will conclude that the alleged mental impairment is not severe. Id. §§ 404.1520a(d)(1), 416.920a(d)(1). If the plaintiff is found to have severe mental impairments, the ALJ will then determine whether the plaintiff's impairments meet or equal the severity of any listed impairment. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

The Social Security regulations also set forth the standard for proper documentation of the special technique at steps two and three of the sequential evaluation process. Id. §§ 404.1520a(e), 416.920a(e). When an ALJ or the Appeals Council makes a determination regarding the severity of mental impairments, "the written decision must incorporate the pertinent findings and conclusions based on the technique." Id. §§ 404.1520a(e)(4), 416.920a(e)(4). In particular, the written decision must contain the plaintiff's significant history, including medical evidence, and each functional limitation that was considered in the final decision. Id. The ALJ also must make specific findings as to the degree of limitation in each of the four functional areas. Id.

In the present case, the ALJ concluded, at Step Two, that Plaintiff did not have a severe impairment or combination of impairments that has significantly limited or is expected to significantly limit the ability to perform basic work-related activities for twelve consecutive months. The Magistrate Judge found no error in the ALJ's analysis and, upon thorough review of the mental health records, concluded that the evidence of record substantiated the ALJ's decision.

Plaintiff now argues that the Magistrate Judge's analysis was erroneous because the ALJ

failed to consider repeated notations of observable symptoms of depression including "poor attention, angry, irritable, depressed mood, loose thought, inappropriate affect, suspiciousness, pressured loud speech, blunted affect, tearfulness, uncooperative behavior and bizarre appearance." (Pl.'s Objections 2–3.) Plaintiff goes on to assert that the Magistrate Judge did not dispute these omissions by the ALJ, but rather went on to supply a post-hoc analysis with record citations that were not included in the ALJ's decision.

This argument is meritless. Plaintiff is correct that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." SEC v. Chenery Corp., 318 U.S. 80, 87 (1943). As such, "'[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision;' the Commissioner may not offer a post-hoc rationalization." Keiderling v. Astrue, No. Civ.A.07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008) (quoting Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000)). Nonetheless, a court is not required "to read the ALJ's opinion in a vacuum." Knox v. Astrue, No. Civ.A.09-1075, 2010 WL 1212561, at *7 (W.D. Pa. May 26, 2010). The standard of review still requires that the reviewing court examine the record as a whole to determine whether the ALJ's reasoning is supported by substantial evidence. Gaul v. Barnhart, No. Civ.A.07-351, 2008 WL 4082265, at *5 n.6 (E.D. Pa. Aug. 25, 2008). "A 'comprehensive explanation' need not always accompany a decision to reject a piece of probative evidence, since 'a sentence or short paragraph would probably suffice' in most instances." Knox, 2010 WL 1212561, at *7 (quoting Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981)). Moreover, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989). In other words, where there is error by the ALJ, but the error would not affect the outcome of the case, remand is not warranted. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

The ALJ, in this matter, engaged in an extensive analysis of the mental health records. Specifically, the ALJ discussed Plaintiff's comprehensive psychiatric evaluation/re-evaluation in January of 2011 at Northwestern Human Services, together with treatment records for her ongoing treatment of anxiety. (R. 315.) The ALJ expressly rejected many of the conclusions in the evaluation as well as many of the notations of observable symptoms of depression in the treatment notes by virtue of the fact that Plaintiff repeatedly perpetuated false claims of having a stroke in 2007. (Id. at 315.) The ALJ specifically remarked that:

> Overall, it is clear that the claimant's credibility is a serious issue in this case. The medical evidence of record does not demonstrate any rational reasoning for the cause of her depression and anxiety, as she continues to maintain both cardiac and orthopedic problems that do not exist. Northwestern Human Services appears to have taken her medical history at face value and included them in their evaluations. Since they never occurred, the undersigned has to consider the fact that their evaluations would result in different conclusions, with likely far higher GAF scores, had it be[en] known that her history was fictional. Additionally, the undersigned noted that there are a number of notes that mention that she is self-sufficient with self-care and toileting . . . showing that she is fully capable of standard functioning and living independently.

(Id. at 315.) The ALJ then went on to consider the Consultative Examination Report of Dr. Murphy, the Consultative Examination Report of Dr. Kaufman, and the Psychiatric Review Technique and Mental Residual Functional Capacity Assessment of state agency psychologist Dr. Rightmyer. (Id. at 315–16.) The ALJ further commented on the fact that no treating or evaluating physician has suggested that Plaintiff could not work because of her impairments. (Id. at 315.) Ultimately, the ALJ concluded that although Plaintiff did, in fact, have a medically determinable mental impairment, she had no more than mild limitations in any of the first three broad functional areas and no episodes of decompensation in the fourth functional area. (Id. at 316–17.) As such, he held that Plaintiff's mental impairment "does not significantly limit the claimant's ability to perform basic work activities." (Id. at 317.)

To the extent that the ALJ did not specifically note every time a treatment report made

mention of an observable symptom of depression or anxiety, the error is harmless. Requiring the ALJ to document each such notation—particularly in light of the ALJ's presumption that Plaintiff had some type of mental impairment—would result in nothing more than an excessively lengthy opinion reaching the same ultimate conclusion that the mental impairment did not significantly affect Plaintiff's functional abilities. Although Plaintiff surmises, based on nothing more than her own conjecture, that "[p]oor attention, suspiciousness, uncooperative behavior, impulsivity, inappropriate pressured angry and rambling speech are all symptoms that would cause functional limitations in the work place," (Pl.'s Objections 3), Plaintiff does not point to any medical evidence of record suggesting that she was functionally limited by such symptoms.[4]  Accordingly, the Court finds no error in this regard.

To the extent that the Magistrate Judge separately discussed why the treatment records upon which Plaintiff relies did not support a finding of a severe impairment, the Court also finds no error. Contrary to Plaintiff's contentions, the Magistrate Judge's discussion was not a post-hoc rationalization for the ALJ's conclusion, but rather a response to Plaintiff's argument and an elaboration on evidence that the ALJ had expressly considered and rejected. As indicated above, the ALJ undertook a review of the treatment notes, but discounted many of the reported symptoms due to Plaintiff's false reporting of her medical history. In response to Plaintiff's challenge to the ALJ's failure to mention notations of depressive symptoms, the Magistrate Judge provided a thorough

---

[4] Plaintiff asserts that Dr. Kaufman, an examining physician, determined that Plaintiff had marked impairment in all areas related to supervision, co-workers and work pressures, and marked impairment in ability to carry out short, simple instructions, and make judgments on simple work-related decisions. (Pl.'s Objections 3–4.) Dr. Kaufman's mental status examination, however, was almost entirely unremarkable and he based his diagnosis of affective disorder on her alleged stroke. (R. 226–27.) Although the ALJ considered Dr. Kaufman's observations, he gave little weight to the Consultative Examination Report "as it is clear that [Dr. Kaufman's] findings were based on the claimant's false allegations. As his only diagnosis is plainly based on the false statements about her strokes, his conclusions are also flawed and given little weight." (Id. at 316.)

explanation of how many of these same treatment notes reflected that Plaintiff was not limited by any mental impairment. (R&R 16–19.) Therefore, the Court finds no improper post-hoc rationalization by the Magistrate Judge.[5]

In short, the Court deems the ALJ's decision regarding the severity of Plaintiff's mental health impairment to be well supported by substantial evidence. As clearly and thoroughly explained by the Magistrate Judge, the ALJ considered and weighed all of the evidence of record to appropriately conclude that although Plaintiff had a mental health impairment, it was not "severe" as defined by the Social Security regulations. Therefore, the Court overrules this Objection.

      B.    **Whether the Magistrate Judge Improperly Found that the ALJ Did Not Need to Consider GAF Scores of Record**

Plaintiff's second objection concerns the ALJ's alleged disregard of Global Assessment of Functioning ("GAF") scores in the record.[6] Specifically, the ALJ noted that a November 2008 psychiatric evaluation by Northwestern Human Services diagnosed Plaintiff with anxiety disorder and a GAF score of fifty.[7] (R. 314.) Approximately one month later, at a second evaluation by Northwestern Human Services, Plaintiff was diagnosed with panic disorder, mood disorder

---

[5] Plaintiff takes issue with the Magistrate Judge's citation to mental health observations by Dr. Wayne Arnold, a cardiologist. (R&R 17.) Plaintiff asserts that the Magistrate's reliance on these observations is improper because Dr. Arnold was not qualified in this area. This objection is meritless. The question before the Court is whether the *ALJ's* decision is supported by substantial evidence. The ALJ did not rely on Dr. Arnold's remarks in reaching his severity determination.

[6] A GAF score is a "numerical summary of a clinician's judgment of [an] individual's overall level of functioning . . . ." See American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (DSM–IV–TR) 32 (4th ed. 2000).

[7] A GAF score in the range of forty-one to fifty indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e .g., no friends, unable to keep a job)." DSM IV–TR at 34.

secondary to a cardiovascular accident, and a GAF score of fifty-five.[8]  (Id. at 314.)  The ALJ "considered the fact that the claimant's GAF scores indicate only a moderate impairment, and also considered that they were further based on false reports of physical 'impairments' that are not documented in the record.  Removing the claimant's false reporting would necessarily result in higher GAF scores, since that reporting is the primary basis for her alleged anxiety."  (Id.)  On review, the Magistrate Judge deemed this conclusion well supported by substantial evidence given the relatively mild findings from the Northwestern Human Services evaluations and Plaintiff's obvious false reporting.  (R&R 18.)  The Magistrate Judge also remarked that a GAF score has no direct bearing on a mental impairment evaluation under Social Security disability evaluation criteria.  (Id. at 17 (citing Gilroy v. Astrue, 351 F. App'x 714, 715 (3d Cir. 2009).)  Ultimately, the R&R recommended that the ALJ's decision be affirmed on this ground.

Plaintiff now argues that, under established law, GAF scores must be mentioned and the ALJ's failure to do so constitutes grounds for remand.  The Court finds this argument meritless.  While the Third Circuit has held that a "GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings," Gilroy v. Astrue, 351 F. App'x 714, 715–16 (3d Cir. 2009),"[t]he district courts in the Third Circuit have repeatedly held that the ALJ's failure to specifically discuss a GAF score that supports *serious* impairments in social or occupational functioning is cause for remand."  Rivera v. Astrue, No. Civ.A.12-6622, 2014 WL 1281136, at *7 (E.D. Pa. March 27, 2014) (emphasis added) (citing cases).  "Because a GAF score constitutes medical evidence accepted and relied upon by a medical source, it should be addressed by an ALJ in making a determination regarding a claimant's disability."  West v. Astrue, No. Civ.A.09-2655, 2010 WL 1659712, at *6 (E.D. Pa. Apr. 26, 2010).  Generally, "[f]ailure to mention or discuss

---

[8]  A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning.  DSM IV-TR at 34.

GAF scores in the forty-one to fifty range merits remand." Joseph v. Astrue, No. Civ.A.11-2668, 2012 WL 4459796, at *6 (E.D. Pa. Apr. 26, 2012).  Notably, however, an ALJ may choose to discount a GAF score based on evidence in the record.  Sweeney v. Comm'r of Soc. Sec., 847 F. Supp. 2d 797, 805 (W.D. Pa. 2012).  For example, in Rios v. Commissioner of Social Security, 444 F. App'x 532 (3d Cir. 2011), the ALJ failed to discuss two GAF scores of 50, but did make specific reference to the consultative examiner's GAF score of 50–55.  Rios, 444 F. App'x at 535.  Finding no error, the Third Circuit reasoned that the "ALJ was not 'cherry picking' or ignoring medical assessments that ran counter to her finding" and instead "used a score that . . . reflect[ed] Rios's therapist's and doctors' notes that his symptoms ranged from moderate to severe."  Id.

In the present case, the ALJ's decision suffers from none of the defects that would require remand.  Plaintiff had only two GAF scores—a fifty and a fifty-five—only one of which indicated any serious symptoms.  The ALJ addressed both scores, noting that the second score was issued a month after the first and by the same mental health facility, thereby suggesting significant improvement in a brief period.  Moreover, the ALJ expressly accorded little weight to the GAF scores as they were based on false reporting of Plaintiff's medical history.  Finally, as aptly noted by the Magistrate Judge, substantial evidence supports the ALJ's disregard of the lower GAF score since the evaluations accompanying that score—an evaluation that was explicitly discussed by the ALJ—showed no remarkable mental health symptoms.  In short, unlike the multitude of cases requiring remand due to an ALJ's complete failure to discuss GAF scores or "cherry-picking" among multiple GAF scores, the ALJ in this matter acknowledged both scores, discussed their relevance pursuant to applicable jurisprudence, and cited substantial evidence to support his decision to accord lower weight to those scores.  As such, the Court overrules Plaintiff's objection on this point.

### C.    Whether the Magistrate Judge Improperly Found that the ALJ Did Not Err in Failing to Consider Plaintiff's Good Work Record in Assessing Credibility

Plaintiff's final objection concerns the Magistrate Judge's affirmation of the ALJ's credibility assessment. It is well established that an ALJ is required to "give serious consideration to a claimant's subjective complaints of pain [or other symptoms], even where those complaints are not supported by objective evidence." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)). Objective evidence of the symptoms themselves need not exist, although there must be objective evidence of some condition that could reasonably produce them. Green v. Schweiker, 749 F.2d 1066, 1070–71 (3d Cir. 1984). Where medical evidence supports a claimant's complaints, the "complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Mason, 994 F.2d at 1067–68 (quotations omitted). The ALJ, however, "has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not fully credible." Weber v. Massanari, 156 F. Supp. 2d 475, 485 (E.D. Pa. 2001) (citing Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974)).

Under the regulations, the kinds of evidence that the ALJ must consider when assessing the credibility of an individual's statements include: the individual's daily activity; location, duration, frequency, and intensity of the individual's symptoms; factors precipitating and aggravating the symptoms; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; treatment, other than medication, received for relief of the symptoms; any non-treatment measures the individual uses to relieve pain or symptoms; and other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3). Moreover, the ALJ should account for the claimant's

12

statements, appearance, and demeanor; medical signs and laboratory findings; and physicians' opinions regarding the credibility and severity of plaintiff's subjective complaints. Weber, 156 F. Supp. 2d at 485 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (S.S.A. 1996)). Ultimately, the ALJ's "'determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" Schwartz v. Halter, 134 F. Supp. 2d 640, 654 (E.D. Pa. 2001) (quoting SSR 96-7p; Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999)).

To the extent Plaintiff objects to the ALJ's general credibility determination in the present case, her argument is misplaced. The ALJ engaged in a lengthy and thorough discussion of all of the foregoing factors. (R. 313–15.) Based on Plaintiff's history of fabricating medical impairments, together with her activities of daily living, relatively conservative medical treatment, unremarkable mental health evaluations, and reports of improvement in treatment notes, the ALJ concluded that Plaintiff was not entirely credible and accorded little weight to her subjective complaints. The Magistrate Judge reviewed this analysis in some detail and found that the ALJ followed the appropriate legal standards in evaluating credibility. Moreover, the Magistrate Judge conducted an independent review of the record and found that substantial evidence supported the ALJ's credibility determination. Given such comprehensive legal and factual analysis, the Court fully adopts the Report and Recommendation without engaging in any duplicative analysis.

To the extent Plaintiff contends that the ALJ failed to consider her work record in assessing credibility, the Court likewise finds this objection meritless. It is well-established that when a claimant has a lengthy work history of continuous work, his or her testimony is entitled to

"substantial credibility." Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979). Courts have remanded cases where the ALJ failed to consider a claimant's work history in connection with his or credibility determination where the claimant had a previous productive work history and had unsuccessfully made attempts to return to work after the onset of the disability. See, e.g., Rieder v. Apfel, 115 F. Supp. 2d 496, 505 (M.D. Pa. 2000) (finding that ALJ failed to properly address claimant's work history and post-accident unsuccessful work attempts); Sidberry v. Bowen, 662 F. Supp. 1037, 1039–40 (E.D. Pa. 1986) (ALJ erred in ignoring claimant's work history and efforts to hold down a job). Nonetheless, "a claimant's work history alone is not dispositive of the question of his credibility, and an ALJ is not required to equate a long work history with enhanced credibility." Thompson v. Astrue, No. Civ.A.09-519, 2010 WL 3661530, at *4 (W.D. Pa. Sept. 20, 2010).

The administrative record in this case reveals that prior to Plaintiff's alleged disability onset date of January 8, 2008, she had continuously worked from 1989 through 2007 as both a certified nursing assistant and a data file clerk. Nothing in the record reflects the catalyst for her disability onset date and cessation of work, other than an alleged, but otherwise undocumented and unproven stroke. Cf. Taybron v. Harris, 667 F.2d 412, 415 n.6 (3d Cir. 1981) (considering work history where an accident caused the impairment and interrupted work). Moreover, unlike the cases discussed above, the record reflects no unsuccessful work attempts or efforts to obtain a job from 2007 forward. See Fox v. Astrue, No. Civ.A.10-192, 2011 WL 3882507, at *10 (W.D. Pa. Sept. 2, 2011) (holding that where a claimant did not attempt to work after the alleged onset date, no remand for consideration of work history was necessary); cf. Sopher v. Astrue, No. Civ.A.10-184, 2011 WL 3444158, at *14 (W.D. Pa. Aug. 8, 2011) ("[T]he matter will be remanded for further consideration in order for the ALJ to reevaluate Plaintiff's credibility in light of his long work history and efforts to return to work."); Rieder, 115 F. Supp. 2d at 507 (remanding for consideration of work history where

claimant worked continuously prior to accident, and after her accident and after her filing for benefits, the plaintiff unsuccessfully attempted to work several times). Finally, and quite contrary to the present matter, the medical records in the cases remanding for consideration of work history supported an obvious disabling condition. Cf. Taybron, 667 F.2d at 415 n.6 ("Every doctor who examined Taybron acknowledged he was in great pain."); Weber v. Massanari, 156 F. Supp. 2d 475, 486 (E.D. Pa. 2001) (remanding case to reevaluate claimant's credibility in connection with long work history where the record also contained objective medical evidence that could reasonably support claimant's testimony). As observed by the Third Circuit, in each of the cases where remand was ordered for consideration of work history, "the claimant not only had a long and productive work history, but also showed evidence of severe impairments or attempted to return to work." Corley v. Barnhart, 102 F. App'x 752, 755 (3d Cir. 2004). Neither of these circumstances exist here.

Moreover, the Magistrate Judge correctly concluded that, even had the ALJ discussed work history, it would not have changed the outcome of the case. The Third Circuit has made clear that remand of a case is not required where stricter compliance with a social security ruling or regulations would not have changed the outcome of the case. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (refusing to remand where stricter compliance with social security ruling would not have changed the outcome of the case). "No principle of administrative law 'require[s] that we convert judicial review of agency action into a ping-pong game' in search of the perfect decision." Coy v. Astrue, No. Civ.A.08-1372, 2009 WL 2043491, at *14 (W.D. Pa. July 8, 2009) (quoting NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969)). As set forth above, the ALJ's credibility determination decision was well grounded in the substantial evidence of record and reflected reasoned consideration of the factors set forth by the Social Security regulations. Remand for consideration of Plaintiff's work history from 1989 to 2007 would be nothing more than

time-consuming exercise which would not alter the outcome of the case.  As such, the Court denies this objection.

## IV.     CONCLUSION

In light of the foregoing, the Court declines to sustain any of Plaintiff's objections.  The ALJ properly found that Plaintiff's mental impairment was not "severe" within the meaning of the Social Security regulations.  Moreover, the ALJ did not improperly disregard Plaintiff's GAF scores.  Finally, the Court finds no error in the Magistrate Judge's refusal to remand the case for consideration of the impact of Plaintiff's work history on her credibility.  Accordingly, the Court will adopt the Report and Recommendation in its entirety.  An appropriate Order follows.